## SANZENBACHER v. HOWARD-CLAY OIL CO. et al.

(Circuit Court of Appeals, Eighth Circuit. July 29, 1922.)

No. 5914.

1. Mines and minerals ⬅️➡️109—Evidence held to establish lease value, if well contract had been performed.

In an action on a bond to secure performance of a contract to drill an oil well, evidence *held* to show that the land reserved by plaintiff would have had a market value for oil leasing purposes if the well had been drilled, which it did not have after defendants breached their contract to drill the well.

2. Mines and minerals ⬅️➡️109—Lost lease value for breach of contract to drill can be recovered, notwithstanding possibility of restoration.

Where the value of land for oil leasing purposes was lost by defendant's breach of its contract to drill an oil well, plaintiff can recover that value as damages suffered by the breach, notwithstanding the possibility of restoring the leased value by some one else drilling the well.

3. Mines and minerals ⬅️➡️109—Measure for breach of oil well contract is not cost of drilling only.

The measure of damages for the breach of a contract to drill an oil well is not limited to the cost of drilling the well, but includes such loss as actually resulted from that character of losses which could have been fairly foreseen by the parties, and therefore includes the lost leasing value of the lands reserved by plaintiff.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action at law by Henry Sanzenbacher, as administrator of the estate of Mrs. L. Sanzenbacher, deceased, and as guardian of the estate of Christ Sanzenbacher, a non compos mentis, against the Howard-Clay Oil Company and others. Judgment for the plaintiff for nominal damages only, and plaintiff brings error. Reversed and remanded for retrial.

---

⬅️➡️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

J. Q. Mahaffey, of Texarkana, Tex. (Wantland & Dickey, of Henrietta, Tex., Lucian W. Parrish, of Washington, D. C., and Keeney & Dalby and King, Mahaffey & Wheeler, all of Texarkana, Tex., on the brief), for plaintiff in error.

A. F. Auer, of Nashville, Ark., for defendants in error.

Before CARLAND and STONE, Circuit Judges, and TRIEBER, District Judge.

STONE, Circuit Judge. This is a suit upon a bond given to secure the performance of a contract between the Howard-Clay Oil Company (principal on the bond), and the Sanzenbachers. The latter were owners of 3,500 acres of land in a supposedly oil territory. Under the contract in question, they agreed to execute a regular form oil and gas lease to the company upon condition that it would, within 60 days start a well thereon, and proceed with diligence to drill to a stipulated depth; that upon location of this well, the surrounding land would be platted and certain portions thereof (totaling 500 acres) released to the Sanzenbachers; and that it would give a bond for $10,000 to secure the performance of the contract. The contract expressly provided that "time shall be the essence of this contract." The lease was to be placed in escrow until the bond was given.

No well was ever started by the company and this suit is upon the bond. The petition, as amended, specified the damages as follows: That at the time this contract was made, the land had an oil and gas leasing value of $10 or more an acre and could have been leased for that, without any obligation on the lessee to immediately develop; that, if the well had been begun as required by the contract, the 500 acres which were to be returned to plaintiffs would have had a further value of $30 an acre. Jury was waived. Plaintiffs introduced their evidence. Defendants introduced no evidence. The contract and bond, performance by plaintiffs and breach by the company were established by the evidence. From a judgment for nominal damages, plaintiffs have sued out this writ of error.

[1] The theory of the court, as expressed in a memorandum opinion, was that the damages alleged were too remote and speculative and that the proper measure of damages was the expense of sinking a well, as to which plaintiffs had introduced no evidence. We think the court was wrong in his reasoning and conclusion. By making the contract, the plaintiffs surrendered a right which was clearly, at that time, worth as much as $5 an acre. That value has disappeared and they have lost it. They lost it only because the contract existed and was not fulfilled. This situation and this character of value were in no way out of the ordinary in this business and it must be presumed that the parties had knowledge of them and contracted in view thereof. The parties knew that failure of the plaintiff in error to perform the contract would result in loss of this value; therefore such loss must have been within the contemplation of the parties when the contract was made. If so contemplated it is recoverable if the amount thereof can be shown with reasonable certainty.

The evidence, in our judgment, is sufficiently definite. It is that at the time of this contract this land had an oil lease value, under the form of lease here given, of at least $10 an acre; that within a day or so after this contract was signed an offer of $5 an acre was made by a responsible party; that as soon as a well is started the surrounding land is blocked off and the parcels sold; that "the very minute the well starts drilling, it doesn't matter whether there is oil in 15 or 20 miles, they begin to sell those offsets, and they sell them on the market to old line companies and everybody. What are known as first offsets sell for $100 an acre, second offsets sell for $60 an acre, third offsets for $40, a mile away for $25, and you get a couple of miles away and the value dwindles down"; that the 500 acres, which were to be reassigned to plaintiffs, would have been very much more in value than the above values; that these raised values are fairly well established in the business.

[2] The trial court emphasizes some testimony to the effect that if the plaintiffs or some one else would start a well, the value would return. This has nothing to do with the matter. There is no obligation upon plaintiffs to drill a well themselves and the testimony is that others will not do so now. There was a clear, clean-cut loss, caused by default on the contract, and the parties should make that good.

[3] Nor is the court right in its conclusion that the cost of a well is the sole measure of damages in contracts of this kind. Under some circumstances that might be a fair measure, but the measure of damages is, in each separate case, such loss as actually resulted from that character of losses which could have fairly been foreseen and therefore must be held to have been within the contemplation of the parties at the time the contract was made.

The judgment is reversed and the case remanded for retrial.