## TRENTMAN v. WHITESIDE.
### No. 9106.

Court of Civil Appeals of Texas. Austin.

June 10, 1942.

Rehearing Denied July 1, 1942.

E. M. Davis, of Brownwood, and Slay & Simon and Simon & Simon, all of Fort Worth, for appellant.

Woodruff & Holloway, of Brownwood, for appellee.

BAUGH, Justice.

This is a suit for damages for breach of contract to drill an oil well. In 1938 Whiteside, and G. M. Smith, owned a block of contiguous oil and gas leaseholds in Brown County, comprising 1,294 acres. They assigned to Trentman four contiguous tracts aggregating 391 acres, retaining a 1/16 overriding royalty, under a contract with Trentman to drill four wells, one on each of the designated tracts. The leaseholds on the 903 acres retained by them adjoined on the west, south, and east the acreage assigned to Trentman. The contract provided that if the first well drilled, on a designated tract, proved to be a producer, then that Trentman should drill three other wells, one on each of the other tracts. If the first well was not a producer, then that Trentman should, within thirty days after the completion thereof, begin drilling a second well on a designated tract. The first well drilled was not a producer and Trentman declined to drill the second well; hence this suit for damages. Smith assigned his interest in their cause of action to Whiteside, and need not be further noticed here.

The evidence shows, and the jury found, that in addition to the overriding 1/16 royalty retained on the acreage assigned to Trentman, a part of the consideration for the contract was the contemplated enhancement of the market value of the retained acreage of plaintiff, created by the actual drilling of said well, while same was being drilled. Since the jury found that had said second well been drilled according to contract, it would have been a dry hole; the only issue of damages involved was that of loss of profits which could have been realized by the plaintiff on the retained leases, while said well was being drilled, regardless of whether oil or gas in paying quantities were ultimately discovered or not.

The jury found, as applied to the various surrounding leases, what such enhanced value, or increased market value, of such several tracts would have been during the process of drilling such second well, had it been drilled, over and above such market value thereof without such well; and the trial court rendered judgment for the total amount of such difference as to all of said retained leases.

■ On the issue presented both parties rely in large measure on the same authorities. It is now settled that the measure of damages for breach of such contract is the value of the performance to the plaintiff, and not the cost of drilling such well. Guardian Trust Co. v. Brothers, Tex.Civ.App., 59 S.W.2d 343, writ refused; Fain-McGaha Oil Corp. v. Owens, 132 Tex. 109, 121 S.W.2d 982; Riddle v. Lanier, 136 Tex. 130, 145 S.W.2d 1094. Profits which could have been realized from such performance, where capable of proof, are recoverable as damages, especially where, as here, they were in contemplation of the parties at the time they entered into the contract. Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097; 13 Tex.Jur., § 102, p. 198, § 105, p. 202. And this rule is applicable to such a contract as that here involved, where a breach results in such loss in value of the adjoining leases. Logan v. Elliott, Tex.Civ.App., 61 S.W.2d 157; Riddle v. Lanier, supra; Sanzenbacher v. Howard-Clay Oil Co., 8 Cir., 283 F. 13. Such profits, however, must be established with reasonable certainty by competent evidence.

■ The jury findings in the instant case that the market value of the retained leases would have been enhanced by the drilling of said well, in the amounts so found, are sustained by competent evidence. Since, however, the jury found that if Trentman had drilled said well it would have been a dry hole and a resultant loss to him, it was clearly incumbent upon the plaintiff to show by competent proof not only a right to recover such damages for the breach of contract; but to prove with reasonable certainty the amount of his damages.

It is the contention of appellant that plaintiff failed to plead, failed to prove, and failed to have a jury finding on this question. Appellant raised the issue not only by exception to plaintiff's pleading, but by objection to the court's charge, and by request to the court to submit to the jury the issue, assuming that the drilling of such well would, while being drilled, have enhanced the value of such leases, whether the plaintiff could have or would have sold such retained leases and thus would have realized his potential profit during the time the well was being drilled.

This the court refused to submit. We have concluded that the court erred in so refusing.

It is obvious, under the jury finding that such well would have been a dry hole, that after the completion of such well had it been drilled, plaintiff's retained leases would have had less value than before. Manifestly the plaintiff, had the well been drilled, would have had three courses open to him. 1. He could have sold, during the time the well was being drilled all of said retained leases and realized the profit from the enhanced value thereof caused by the drilling. 2. He could have sold part of such leases and retained the remainder awaiting completion of such well, taking his chances on a greater profit to him if the well proved to be a producer. Or, 3. He could have retained all of said leases "riding the well down," as designated by some of the speculators in such matters, thus gambling on a greater profit if the well were a producer. If it had been a dry hole, as the jury found it would have been, manifestly he would have realized no profits from his leases had he pursued the course stated in 3 above; and may or may not have realized any profit had he pursued the course stated in 2. Under the jury findings as to the amount of enhanced values, he could have realized same in full only by sale, prior to completion, of all of his leases at the values found by the jury. Even in that event his profits would not have been the total value so found, but such values less the cost to him of effecting such sales. Yet the court awarded him judgment on the basis of the full values found by the jury with no allowances or deductions for expenses of marketing same.

The mere opportunity, to be exercised by him as he chose, of realizing, during a short period of time only, a profit from the retained leases, does not, we think afford that degree of proof of certainty of damages sufficient to sustain a judgment for the full amount of profits he might have realized by selling all of his leases at the maximum market value thereof at a given time.

■ This is, we think, the conclusion necessarily to be drawn from the holding of the Supreme Court in Riddle v. Lanier, supra. The fact that in that case the well was begun and abandoned before it reached the depth contracted for, and in the instant case the well was never begun would make no difference in the application of such rule. In either instance the burden is upon the plaintiff "to show what the value of full performance would have been to him." It is not sufficient for plaintiff to show what he could have done; he must show what he would have done had the well been drilled,—that is, had the contract been performed. The same issue of potential profits was involved in the Lanier case, as is relied upon by the plaintiff here. In that case the plaintiff testified that had the well been completed to the required depth, he would not have sold his retained leases, because he was taking his "gamble" on a full performance returning him a greater profit if the well were a producer. The jury there found that the well would have been a dry hole; and the Supreme Court held that because he would not have sold his leases he was entitled to no damages. This necessarily implies, we think, that the burden is on the plaintiff, in order to recover for lost profits, which are at most more or less speculative, arising from breach of a contract, fulfillment of which would have imposed a loss upon the other party thereto, to prove what he would have done had the contract been performed. The amount of his damages depends upon the profits which he would have realized from the performance of the contract. And such profits, in turn, depended upon what plaintiff would have done with his leases. If he had chosen to hold them, he would have realized no profits. Consequently the burden rested upon him to show what he would have done; not merely what he could have done, had he chosen so to do, within the limited time he would have had to act. The evidence raised this issue and it should have been submitted to the jury. See 13 Tex.Jur., § 108, p. 207.

■ Appellant also urges as duplicitous and as a comment on the weight of the evidence the manner in which the second issue was submitted to the jury. That is, whether the drilling of the well as contracted for "would have increased the demand for and market value of the leases owned and retained by plaintiffs in said block?" The plaintiff so pleaded. While generally there is a direct relationship between demand for an article and the consequent market; it does not necessarily follow that increased demand, or a more active market, results in an increased market price. It is conceivable that a market value may remain steadfast though at times the active demand for it vary. At any rate existence of an increased demand for such leases is, we think, but evidentiary of the issue of market value, and could as well have been

omitted entirely from the question of market value.

Appellant also complains of the refusal of the trial court to submit certain special issues requested by him as embodying his defense of fraud and misrepresentation on the part of plaintiff in inducing the contract. We need not set out the requested issues here. They but present, in another form, the issues submitted to the jury involving these defenses which, in the main, followed the language of the pleadings of the defendant. This was sufficient. See 41 Tex.Jur., § 271, p. 1098. Not only did the jury find that defendants did not misrepresent the facts as to matters alleged; but in answer to issues submitted to them found that plaintiff made his own independent investigation of these facts; and that he relied upon his own investigation in entering into the contract. There is no contention made that such findings are not supported by the evidence. Manifestly if appellant made his own investigation of the facts and relied on it to make the contract; he will be charged with knowledge of whatever a proper investigation would have disclosed. Gray v. Williams, Tex.Civ.App., 290 S.W. 844; Newman v. Lyman, Tex.Civ.App., 165 S.W. 136. The facts complained of were that certain dry holes had been drilled in this area, which were not disclosed to him, a matter which readily could have been ascertained by a proper investigation.

For the reasons stated the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.