# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00324-CV

**Sierra Associate Group, Inc. d/b/a New Austin Homes, Appellant**

**v.**

**Bryan Hardeman; Hardeman Family Joint Venture, Ltd.; Richard A. Smith; Sandion G.P.; and Tosca Gruber, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. D-1-GN-06-003059, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises from a dispute involving the sale of waterfront property on Lake Travis in Austin, Texas. Appellant Sierra Associate Group, Inc. d/b/a New Austin Homes ("Sierra") sued the seller, appellees Bryan Hardeman and Hardeman Family Joint Venture, Ltd., and the seller's real estate agent and broker, appellees Richard A. Smith, Sandion G.P., and Tosca Gruber, alleging common law and statutory fraud, violation of the deceptive trade practices act ("DTPA"), and negligent misrepresentation based on the description of the property as listed by the seller and the failure to disclose restrictive covenants prohibiting the construction of a boat dock on adjacent land owned by a third party. The trial court granted summary judgment in favor of the appellees on all claims and awarded attorney's fees to the appellees. Sierra challenges the trial court's judgment, the award of attorney's fees, and certain evidentiary rulings on appeal. Finding no reversible error, we affirm the trial court's judgment.

# BACKGROUND

## *The transaction*

Bryan Hardeman, acting as general partner for Hardeman Family Joint Venture, Ltd. (the "Partnership"), signed a listing agreement with real estate agent Tosca Gruber for the sale of real property located at 16308 E. Lakeshore Drive, Austin, Texas (the "Property"). The Property is located in the Hudson Bend Colony Subdivision and can only be used for residential purposes. The northeast boundary of the Property runs along the 670′ contour line of Lake Travis.[1]

Lake Travis is a flood control lake with widely varying surface levels. The shoreline of Lake Travis moves as the surface level of the lake changes. When Lake Travis approaches full capacity at 681′, its waters cover the Property's northeast boundary and a portion of the Property above the 670′ contour line. However, from the time Hardeman listed the Property for sale on April 13, 2006, until the closing of the sale from Hardeman to Sierra on July 12, 2006, the water level in Lake Travis was below the 670′ contour line. Thus, the shoreline of Lake Travis did not reach the Property's northeast boundary.

The adjoining land below the 670′ contour line on the other side of the Property's northeast boundary is owned by the Sikes Trust, an entity unrelated to Hardeman or the Partnership. This adjoining land is generally known as McIntosh Cove. For an annual fee, the Sikes Trust allows

---

[1] The title commitment reflects that the Lower Colorado River Authority was granted a perpetual easement for the right to overflow, inundate, and submerge all lands lying below the 670′ contour line as described in the instrument recorded in volume 584, page 441 of the deed records of Travis County, Texas. The title commitment also reflects that the LCRA was granted a subsequent perpetual easement for the right to overflow, inundate, and submerge all lands lying below the 715′ contour line as described in the instrument recorded in volume 682, page 444 of the deed records of Travis County, Texas.

the owners of the eighteen lots abutting McIntosh Cove to maintain swim platforms, but not boat docks, on the land owned by the Sikes Trust.  The owners of the abutting lots all have the right to build boat docks on their own land.

Gruber and Tom Walton are licensed real estate agents whose licenses are sponsored by Sandion G.P. d/b/a/ Coldwell Banker United, Realtors.[2]  Gruber and Walton listed the Property for sale as follows:

> Wonderful Lake Travis Waterfront at [the] end of Hudson Bend.  Pool, stunning views of sparkling blue lake, expansive rooms, walls of glass.  Gated — the perfect charming private retreat.  Main body waterfront!

In June 2006 another real estate agent, Joseph Longton, contacted Walton with a prospective buyer for the Property.  Longton's clients, Mr. and Mrs. Guthrie, entered into a contract prepared by Longton to purchase the Property.[3]  But the Guthries thereafter decided against purchasing the Property and assigned their right to purchase the Property under the sales contract to Sierra.  As consideration for their assignment, the Guthries received $500 from Sierra, which

---

[2]  Appellee Richard A. Smith is a general partner of Sandion G.P.

[3]  The contract prepared by Longton was Standard Contract Form TREC No. 20–7 promulgated by the Texas Real Estate Commission.  *See* 22 Tex. Admin. Code § 537.28 (2008) (Tex. Real Estate Comm'n) (Standard Contract Form TREC No. 20-7), *current version available at* www.trec.state.tx.us/pdf/contracts/20-8.pdf.  In May 2008, the Texas Real Estate Commission proposed amendments to form TREC No. 20-7.  *See* 33 Tex. Reg. 3883-84 (May 16, 2008).  These amendments were subsequently adopted, and form TREC No. 20-7 was replaced with form TREC No. 20-8.  *See* 33 Tex. Reg. 5695, 5698 (July 18, 2008).  The amendments were effective September 1, 2008.  *Id.*

covered the loss of the nonrefundable option fee the Guthries had paid to the Partnership, and a return of their $25,000 earnest money deposit. Longton continued to act as real estate broker for Sierra.

The standard form contract promulgated by the Texas Real Estate Commission ("TREC") and used by Longton described the Property as "Lot 8 Block 3, Hudson Bend Colony Sec 3 Addition, City of Austin, County of Travis, Texas, known as 16308 E. Lake Shore Dr., Austin, Texas 78734." The purchase price was $1,225,000. The contract contained no covenant, condition, or requirement that the buyers were obtaining the right or permission to construct, anchor, or maintain a boat dock on land other than the Property itself—i.e., there was nothing in the contract regarding the right to construct a boat dock on adjoining land owned by the Sikes Trust below the 670′ contour line.

A Travis Central Appraisal District ("TCAD") map attached to the contract showed the Property's boundaries and identified the Sikes Trust as the owner of the land adjoining the Property's northeast boundary. The contract gave the buyer the right to inspect and investigate the Property to determine whether it was suitable for the buyer's intentions. Paragraph 6.D. of the contract provided:

> OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the (Title) Commitment other than items 6A(1) through (8) above . . . Buyer must object not later than (i) the Closing Date or (ii) _____ days after Buyer receives the Commitment, Exception Documents, and the survey, whichever is earlier. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object . . . .

4

Paragraph 7.D. of the contract also provided that Sierra agreed to accept the Property in its present condition:

> ACCEPTANCE OF PROPERTY CONDITION: Buyer accepts the Property in its present condition; provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: [none specified].

Sierra did not specify any repairs or treatments to be made by Hardeman or the Partnership.

In addition to the contract, Hardeman completed the required seller's disclosure notice, which encouraged the buyer to "HAVE AN INSPECTOR OF YOUR CHOICE INSPECT THE PROPERTY PRIOR TO CLOSING." Like the contract, the seller's disclosure notice made no mention of the right to build a boat dock on adjoining land.

Prior to closing on the Property purchase, Terry Polston, the sole officer, director, and shareholder of Sierra, reviewed a survey of the Property prepared July 6, 2006, and saw that the northeast boundary of the Property was at the 670′ contour line. The survey also showed that the shoreline, or water's edge, of Lake Travis was not on the Property at that time.[4] Polston was aware prior to the closing that the water level in Lake Travis was below the 670′ contour line, and he knew that the adjoining land below the 670′ contour line was owned by someone else. So Polston asked his real estate agent Longton and his long-time real estate attorney Barbara Gibson to check into "what that represented."

Polston testified in his deposition that Gibson informed him that the Lower Colorado River Authority *controlled* the land below the 670′ contour line even though the survey reviewed

---

[4] In July 2006, the surface level of Lake Travis was between 655′ and 660′.

5

by Polston showed the Sikes Trust as the owner of the land adjoining the Property below the 670′ contour line. Polston also testified that he conducted his own investigation with his agent Joe Longton and the LCRA and that Longton "went down [to the LCRA] several times, himself, in my behalf, checking on it, just to try to make, you know, heads or tails of what that really represented." Polston testified that, based on his conversations with Gibson and Longton, he believed he would have to get permission from the LCRA, not the Sikes Trust, to construct a boat dock on the land owned by the Sikes Trust below the 670′ contour line.

On July 7, 2006, Heritage and Chicago Title Insurance Company issued a new "Commitment for Title Insurance" showing Sierra as the proposed insured. Consistent with paragraph 6.A. of the sales contract, this title commitment excepted from coverage:

> 4.    Any titles or rights asserted by anyone, including, but not limited to, persons, the public, corporations, governments or other entities
>
>     a.    to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans . . . .

Sierra did not object to the title commitment, the legal description of the Property, or to the survey plat prior to closing.

***The restrictions***

Sierra closed on the Property purchase on July 12, 2006, and, shortly thereafter, Sierra became aware of the restrictions against building boat docks on the land owned by the Sikes Trust below the 670′ contour line. Longton testified that, after the closing, he and Polston were at the Property and happened to walk next door to speak with the neighbor, Paul Crow. Longton testified

6

that Crow asked them if they were aware of the restrictions regarding boat docks. Longton stated, "[T]hat's what started our understanding that we didn't have that right to use the waterfront."

Crow explained that there were deed restrictions prohibiting boat docks on the property owned by the Sikes Trust below the 670′ contour line. In 2004, the Sikes Trust filed a document entitled "Restrictive Covenants for McIntosh Cove on Lake Travis" in the deed records of Travis County, advising that the Sikes Trust would not grant permission to locate a permanent boat dock on lands owned by the trust in McIntosh Cove.

### The lawsuit

Because it could not build a boat dock on the Sikes Trust's land without the trust's permission, Sierra filed suit against Hardeman and the Partnership asserting claims of common law and statutory fraud and violation of the DTPA. Sierra filed an amended petition naming Smith, Sandion G.P., and Gruber as additional defendants on November 1, 2006.[5] Sierra alleged that the appellees knew of Sierra's desire to build a boat dock, but fraudulently represented to Sierra or its representatives that a boat dock could be built despite knowledge of the restrictions against building a boat dock on the adjacent land owned by the Sikes Trust. Sierra further alleged that the appellees had a duty to disclose the existence of the restrictions and failed to do so. By its suit, Sierra sought rescission of the sale and consequential damages. Alternatively, Sierra sought actual damages—i.e., the difference in value between the sales price and the alleged "true value" of the

---

[5] The record also includes an amended petition filed by Sierra on June 7, 2007, which added the claim of negligent misrepresentation.

7

Property. Sierra also sought exemplary damages under the DTPA and the recovery of its attorney's fees and costs.

The appellees filed separate motions for summary judgment. Among other grounds, Hardeman and the Partnership moved for summary judgment under Texas Rule of Civil Procedure 166a(c) on the ground that the summary judgment evidence conclusively negated essential elements of Sierra's claims, including causation and reliance, because Sierra purchased the Property "as is."[6] Smith, Sandion G.P., and Gruber also moved for summary judgment on the ground that the summary judgment evidence conclusively negated the element of reliance.[7] With respect to Sierra's DTPA claim, all of the appellees moved for summary judgment on the ground that Sierra's claim was barred under section 17.49(g) of the DTPA because Sierra paid more than $500,000 and the Property was not a residence within the meaning of the statute.

In addition to their motions for summary judgment, the appellees also filed counterclaims against Sierra for the recovery of attorney's fees and expenses pursuant to paragraph 17 of the contract, which states that "[t]he prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party."

The trial court granted summary judgment in favor of Hardeman and the Partnership and Smith, Sandion G.P., and Gruber. The trial court also granted the counterclaim for reasonable

---

[6] Hardeman and the Partnership also moved for summary judgment under Texas Rule of Civil Procedure 166a(i).

[7] Smith, Sandion G.P., and Gruber asserted this ground in the first supplement to their motion for summary judgment.

8

attorney's fees included in the motion for summary judgment filed by Smith, Sandion G.P., and Gruber. After a bench trial on the counterclaim for attorney's fees and costs filed by Hardeman and the Partnership, the trial court rendered final judgment that Sierra take nothing on its claims. In its final judgment, the trial court awarded attorney's fees to Smith, Sandion G.P., and Gruber in the amount of $20,000. The trial court awarded attorney's fees and costs to Hardeman and the Partnership in the respective amounts of $79,650 and $6,970.76.[8]

Sierra filed a motion for new trial, which was overruled by operation of law. Sierra then filed a timely appeal to this Court.

## DISCUSSION

In four issues, Sierra challenges the trial court's grant of summary judgment in favor of the appellees. Sierra asserts that material fact issues exist that preclude summary judgment and that its claims against the appellees are not barred by its independent investigation or the "as is" provision in the contract. Sierra also contends that the trial court erred in awarding attorney's fees to the appellees and that the trial court erred in sustaining the appellees' evidentiary objections and striking portions of Sierra's summary judgment evidence. The appellees respond that there was no error in the trial court's judgment because there were no disputed issues of material fact and, therefore, the appellees were entitled to summary judgment as a matter of law. The appellees assert

---

[8] The trial court's judgment also awarded conditional attorney's fees to Smith, Sandion G.P., and Gruber, and to Hardeman and the Partnership in the event of successful appeals to the court of appeals or the Texas Supreme Court.

that they had no duty to disclose the restrictions against building a boat dock on land owned by a third party and that, when Sierra agreed to purchase the Property "as is," Sierra agreed to conduct its own investigation, relied on that investigation, and thereby accepted the risk that it may have been wrong. The appellees further maintain that the trial court properly awarded their respective attorney's fees and that Sierra has waived its challenge to the trial court's evidentiary rulings.

### *Standard of review*

We review the trial court's grant of summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004); *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A defendant who moves for summary judgment under Rule 166a(c), as here, is entitled to have its motion granted if it conclusively negates at least one of the essential elements of the plaintiff's cause of action or if it conclusively proves each element of its affirmative defense, thereby showing that it, as the movant, is entitled to judgment as a matter of law and no genuine issues of material fact remain. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999). The defendant must support its motion with proper summary judgment evidence. Tex. R. Civ. P. 166a(c). Only if the defendant meets its burden does the burden shift to the plaintiff, as the nonmovant, to establish that a genuine issue of material fact remains. *Id.* When an order granting summary judgment does not specify the grounds on which the court relied, the reviewing court must affirm the judgment if any of the theories raised in the motion for summary judgment is

meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625-26 (Tex. 1996).

We review the trial court's evidentiary decisions for abuse of discretion. *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527-28 (Tex. 2000). Whether to admit or exclude evidence lies within the sound discretion of the trial court. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). As a reviewing court, we will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *See State Bar of Texas v. Evans*, 774 S.W.2d 656, 658 n.5 (Tex. 1989). Moreover, we will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1; *see also Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989).

### *Common law fraud, statutory fraud, and negligent misrepresentation*

In its first and second issues, Sierra challenges the trial court's summary judgment. Sierra contends that the trial court improperly granted summary judgment because Sierra raised a genuine issue of material fact on each element of its claims. In support of its allegations of common law fraud, statutory fraud, and negligent misrepresentation, Sierra makes two basic contentions: the appellees committed fraud and/or negligent misrepresentation by (1) listing the Property as "waterfront" property; and (2) by failing to disclose the restrictions against building a boat dock on land owned by the Sikes Trust. Sierra further contends that its claims are not barred by its independent investigation or the "as is" provision in the contract.

11

Sierra's claims for common law fraud, statutory fraud in a real estate transaction, and negligent misrepresentation all share the common element of reliance. *See* Tex. Bus. Com. Code Ann. § 27.01(a) (statutory claim of fraud in a real estate transaction requires proof of reliance) (West 2002); *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997) (recognizing claims of common law fraud and negligent misrepresentation share common element of reliance). Because Sierra's claims of common law fraud, statutory fraud in a real estate transaction, and negligent misrepresentation all required some form of reliance, summary judgment was proper on Sierra's claims if the appellees negated reliance as a matter of law. *See American Tobacco Co.*, 951 S.W.2d at 436. We conclude that the appellees conclusively negated the element of reliance.

The summary judgment evidence before the trial court included excerpts from Polston's deposition testimony. In his deposition, Polston testified that, prior to closing, he reviewed a survey of the Property that raised concerns about whether he could build a boat dock. The survey reviewed by Polston and prepared by AllStar Land Surveying showed that the shoreline of Lake Travis was below the 670′ contour line and, therefore, beyond the northeast boundary of the Property. Polston testified that he knew the water level in Lake Travis went up and down and that, if he wanted a boat dock, he would have to put it far enough out into the lake so that boats could access it without running aground. He further testified that he asked his real estate attorney of 20 years to find out who owned the property below the 670′ contour line. Polston stated:

> I wanted to know, my question to my attorney, was that a problem, you know, was that an issue, you know, with going in and putting a boat dock on it. So I didn't really say who owns this property. I was just saying my pins stop here, and the water is past it, so is there any restrictions or problems on that, and that's what she was checking on.

12

Polston testified that his real estate attorney "looked into the title work . . . to make sure that there was nothing attached to it, to this property, and that would keep me from doing anything with the boat dock" and that he relied on his real estate attorney's advice.

Polston also testified that he relied on the advice of his real estate agent Joe Longton. According to Polston, Longton met with an LCRA employee and asked the employee if there was any problem putting a boat dock "in that area . . . and according to [Longton], they pulled all this information out, looked at it, and said no." Polston stated that he "felt comfortable in going ahead and closing on this purchase" based on the information and advice he received from Gibson and Longton.

Polston's testimony conclusively establishes that he conducted his own investigation through Gibson and Longton into whether or not he could anchor a boat dock over the adjacent property below the 670′ contour line and that he relied on the advice of Gibson and Longton, not any alleged misrepresentation made by the appellees, in deciding whether to purchase the Property. One cannot secure redress for fraud when he or she has acted in reliance on his or her own judgment derived from an independent investigation or the advice of his or her own agents. *Trentman v. Whiteside*, 163 S.W.2d 418, 421 (Tex. Civ. App.—Austin 1942), *aff'd*, 170 S.W.2d 195 (Tex. 1943); *Dillard v. Clutter*, 145 S.W.2d 632, 634 (Tex. Civ. App.—Amarillo 1940, writ ref'd); *Donoho v. Hunter*, 287 S.W.47, 49-50 (Tex. Comm'n App. 1926, judgm't adopted).

To the extent Sierra contends that Polston relied on the "affirmative characterization" of the Property as "waterfront" property by the appellees, we reject that argument. Under Texas law, Sierra was charged with knowledge of the facts that a reasonable investigation would have revealed.

13

*See Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962). A party in an arm's length transaction must exercise ordinary care for the protection of his own interests, and any failure to do so will not be excused "by mere confidence in the honesty and integrity of the other party." *Id.*

The record shows that Sierra was aware that the Sikes Trust, not Hardeman or the Partnership, owned the adjoining land below the 670′ contour line. The record also shows that the shoreline of Lake Travis was below the 670′ contour line from the time the Property was listed for sale until closing. The survey reviewed by Polston prior to closing showed that the shoreline of Lake Travis was below the 670′ contour line and did not reach the Property's northeast boundary. Thus, Polston knew that if he wanted to build a boat dock with access to the water, the boat dock would have to be anchored on the land owned by the Sikes Trust below the 670′ contour line. Although Polston knew the adjoining land was owned by the Sikes Trust, neither Polston, Longton, nor Gibson ever contacted Carole Sikes or any other trust representative to ask if a boat dock could be built on the trust's land.

The record also shows that Polston learned of the restrictions when he and Longton visited the Property after closing and spoke with a neighbor. The restrictions were on file as a matter of public record in the Travis County deed records. Had Sierra exercised reasonable care and diligence, it could have learned of the restrictions against building a boat dock on the land owned by the Sikes Trust.

Because Sierra is charged with knowledge of the facts that a reasonable investigation would have revealed and a reasonable investigation would have revealed the restrictions against building a boat dock on the land owned by the Sikes Trust, as a matter of law, Sierra cannot have

14

relied on the appellees' "affirmative characterization" of the Property as "waterfront" property. *See Thigpen*, 363 S.W.2d at 251. Because the summary judgment evidence conclusively negated the element of reliance as a matter of law, there was no genuine issue of material fact with respect to Sierra's claims of common law and statutory fraud and negligent misrepresentation, and the appellees were entitled to summary judgment on those claims.[9]

### DTPA

Sierra also alleged that the appellees violated the DTPA by engaging in false, misleading or deceptive acts or practices. However, subsection 17.49(g) of the DTPA provides that the DTPA does not apply to "a transaction . . . involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence." Tex. Bus. & Com. Code Ann. § 17.49(g) (West 2002). The summary judgment evidence is clear that the total consideration paid for the Property was more than $500,000, and the transaction did not involve a residence within the meaning of the statute. The closing price for the sale of the Property was $1,225,000, and the borrower's affidavit signed by Polston stated that the Property was not and was never intended to be Sierra's residence. On this record, we conclude there was no genuine issue of material fact with respect to Sierra's alleged violation of the DTPA and that the appellees were entitled to judgment on that claim as a matter of law.

---

[9] Having concluded that the summary judgment evidence conclusively negated the element of reliance, we do not reach Sierra's claims based on the appellees' failure to disclose the restrictions. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) (reviewing court must affirm the judgment if any theory raised in the motion for summary judgment is meritorious).

Having concluded that the appellees were entitled to judgment as a matter of law on all of Sierra's claims, we overrule Sierra's first and second issues.

***Attorney's fees***

In its third issue, Sierra challenges the award of attorney's fees to the appellees. Sierra complains that the trial court erred in awarding attorney's fees to all parties because Sierra's claims were not "related to" the contract since they were based on fraudulent inducement and not breach of contract. Sierra further complains that the trial court erred in awarding attorney's fees to Smith, Sandion G.P., and Gruber because they were not parties to the contract, nor were they third-party beneficiaries to the contract. We find Sierra's complaints to be without merit.

Paragraph 17. of the TREC-promulgated contract prepared by Sierra's agent Longton provided:

> 17.    ATTORNEY'S FEES: The prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party.

There can be no question that Sierra's lawsuit was "a legal proceeding related to this contract" within the meaning of paragraph 17. Sierra filed a lawsuit, which is, of course, a legal proceeding. As part of the relief requested by its suit, Sierra requested the court to rescind the contract. Although based in tort and statutory causes of action, the litigated claims all relate to the sales contract. *See Robbins v. Capozzi*, 100 S.W.3d 18, 27 (Tex. App.—Tyler 2002, no pet.) (party entitled to recover attorney's fees for successfully defending fraud and DTPA claims under contract provision for such fees to "[t]he prevailing party in any legal proceeding brought under or with respect to the transaction

16

described in his contract"); *Dickerson v. Trinity-Western Title Co.*, 985 S.W.2d 687, 692 (Tex. App.—Fort Worth 1999, pet. denied) (rejecting argument that fraud and DTPA tort claims were not related to contract for purpose of provision awarding attorney's fees to "a prevailing party in any legal proceeding brought under or with relation to" the contract). We therefore reject Sierra's contention that its lawsuit was not "a legal proceeding related to this contract" within the meaning of paragraph 17.

We next consider whether the trial court erred in awarding attorney's fees to Smith, Sandion G.P., and Gruber. Sierra contends that paragraph 1. of the contract defines the parties to the contract as the "seller" and "buyer" and, therefore, the real estate agent and broker cannot be a party within the meaning of paragraph 17., nor can the real estate agent or broker be considered a third-party beneficiary to the contract. As a result, Sierra claims that it was error for the trial court to award attorney's fees to Smith, Sandion G.P., and Gruber.

In support of this argument, Sierra relies on the memorandum opinion in *Williamson v. Guynes*, No. 10-03-00047-CV, 2005 Tex. App. LEXIS 2243 (Tex. App.—Waco 2005, no pet.) (mem. op.), in which our sister court held it was error for the trial court to award attorney's fees based on a similar contract provision, which stated "The prevailing party in any legal proceeding brought under or with respect to the transaction described in this contract is entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees." *Id.* at *2. We are not persuaded by the analysis of our sister court and, therefore, decline to adopt its holding.

The contract prepared by Longton was a standard form contract promulgated by a state agency. *See* 22 Tex. Admin. Code § 537.28 (2008) (adopting standard contract form

17

TREC No. 20-7).  With certain exceptions not applicable here, real estate licensees such as Smith, Sandion G.P., and Gruber are required to use only those contract forms promulgated by TREC.  *Id.* § 537.11 (2008).  Because the contract at issue was promulgated by rule through the agency rulemaking process, we construe the contract as an administrative rule.  *See, e.g.*, *Texas Liquor Control Bd. v. Attic Club, Inc.*, 457 S.W.2d 41, 45 (Tex. 1970) ("A rule or order promulgated by an administrative agency acting within its delegated authority should be considered under the same principles as if it were the act of the legislature.").  We construe administrative rules like statutes. *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976).  In construing an administrative rule, our primary objective is to give effect to the agency's intent. *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999).  Unless the rule is ambiguous, we follow the plain language of the rule.  *Id.*  We will defer to an agency's interpretation of its own rule unless it is plainly erroneous or inconsistent with the rule.  *Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991).

The language of paragraph 17. is clear.  This language provides that *the prevailing party in a legal proceeding* in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and costs.  This language does not limit the recovery of attorney's fees and costs in the manner urged by Sierra.  Moreover, in 1997, when the real estate commission adopted similar language in a prior version of standard contract form TREC No. 20-7, the Commission stated that "nonparties such as brokers and the escrow agent would be entitled to recover attorney fees in connection with any legal proceedings brought under or with respect to the transaction." *See* 22 Tex. Reg. 10133, 10134 (Oct. 10, 1997) (adopting standard contract form TREC No. 20-3).

18

The language adopted by the real estate commission in 1997 provided: "The prevailing party in any legal proceeding brought under or with respect to the transaction described in this contract is entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees." *See* 22 Tex. Admin. Code § 537.28 (1997) (adopting standard contract form TREC No. 20-3). This language is virtually the same as the language of paragraph 17. in standard contract form TREC No. 20-7 at issue here, which provides that the prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and costs. The only difference between the language in the two form contracts is the substitution of the phrase "related to this contract" in form TREC No. 20-7 for the phrase "brought under or with respect to the transaction described in this contract" in form TREC No. 20-3. Because the language in form TREC 20-7 is substantially the same as the language in form TREC No. 20-3 and because the real estate commission's interpretation of its rule is neither plainly erroneous nor inconsistent with the plain language of the rule, we defer to the commission's interpretation of paragraph 17. and find no error in the trial court's decision awarding attorney's fees to Smith, Sandion G.P., and Gruber.[10] We overrule Sierra's third issue.

---

[10] Our holding is consistent with the real estate commission's 2008 adoption of standard contract form TREC No. 20-8 to replace form TREC No. 20-7. In form TREC No. 20–8, the commission amended paragraph 17. to substitute "Buyer, Seller, Listing Broker, Other Broker or escrow agent who prevails" for "the prevailing party" to clarify that the attorney's fee provision applies to all named persons, not just the parties to the contract. *See* 33 Tex. Reg. 3883 (May 16, 2008).

*Evidentiary rulings*

In its fourth issue, Sierra challenges certain evidentiary rulings by the district court. In support of its argument that the trial court erred in sustaining certain hearsay objections, Sierra contends that the trial court failed to "consider[ ] whether the testimony at issue was offered to prove the truth of the matter asserted and, in one case[,] ignored clear deposition testimony from Mr. Hardeman that the declarant was his agent." Sierra has included the appellees' objections and its responses thereto as appendices to its appellate brief. However, beyond Sierra's statement that the testimony at issue was not offered to prove the truth of the matter asserted, Sierra cites no legal authority to support reversal of the trial court's rulings. Sierra likewise fails to explain how the trial court's rulings probably caused the rendition of an improper judgment.[11] Without more, Sierra's conclusory allegations are insufficient to preserve this error for our review. *See* Tex. R. App. P. 38.1(h) (requiring citation to authority and substantive analysis on each issue); *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 410 (Tex. 1997) (failure to brief an argument waives error on appeal); *Ryan v. Abdel-Salam*, 39 S.W.3d 332, 336 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (reviewing court will not perform independent review of record and applicable law to determine whether error complained of occurred); *see also Fredonia State Bank v. General Am. Life Ins. Co.*, 881 S.W.2d 279, 284-85 (Tex. 1994) (holding appellate court has discretion to deem points of error waived due to inadequate briefing). We overrule Sierra's fourth issue.

---

[11] Sierra states only that "[t]he erroneous rulings on summary judgment objections led to the incorrect result and judgment."

## CONCLUSION

Having overruled Sierra's issues on appeal, we affirm the trial court's grant of summary judgment in favor of the appellees.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: February 20, 2009

21