## WILLIAMS et ux. v. SAUNDERS.
### No. 2975.

Court of Civil Appeals of Texas. Waco.
Nov. 8, 1951.

Harry W. Flentge, Gatesville, for appellants.

Brown & Dickie, Gatesville, Bryan, Maxwell & Bryan, Waco, for appellee.

LESTER, Chief Justice.

Appellee, Watt L. Saunders, filed this suit against the appellant, L. E. Williams, who resided on the farm of appellee, for an injunction to restrain appellant from cutting cedar posts on the premises. The appellant filed a cross action for damages, alleging he had entered into a verbal lease for a period of five years for the land involved; that pursuant to said verbal lease he had been given possession by the appellee, paid part of the consideration for the lease for the first year and made valuable

improvements upon the land. The appellee pleaded that the lease contract was for a period of more than one year and void under Article 3995, Section 4, Vernon's Ann.Civ.Stats., commonly known as the statute of frauds. The appellant further alleged that he had complied with the necessary requirements to eliminate the statute of frauds, and in the alternative, that the facts were sufficient to show that the transaction would be a fraud upon appellant if not enforced by specific performance. In the further alternative he alleged that the appellee, Watt L. Saunders, by making certain promises to appellant, caused the appellant to resign from his position from which he was receiving an annual salary of $4,000 in order to move to the farm of the appellee, and that he had suffered damages by loss of his salary and that he had sustained damages by reason of profits that he would have made in goats had the appellee complied with his agreement to fence the ranch with a goat-proof fence.

The court submitted two issues. The first requested the jury to find the value of materials furnished by the appellee and labor, if any, in the building and construction of any improvements on the farm of appellee, to which the jury found $1,000. The second issue inquired of the jury the value of the premises per month to the appellant during the time he occupied said premises, to which the jury found the sum to be $25. The court deducted $25 per month during the time the premises were occupied by the appellant and entered judgment for the appellant for $725. To these issues the appellant made no objection as to the form or manner of submission but objected to the charge of the court for the reason the court did not submit certain issues, which will be hereinafter discussed.

■ Appellant's first proposition is: "The court erred in not permitting the appellant to testify to the enhanced value of the property involved in the suit." The appellant offered this testimony to prove the premises had been enhanced in value as a result of his labor that he had performed. The appellee objected to the proffered testimony on the ground that the witness was not shown to be qualified to express his opinion on the matter and the evidence was wholly immaterial and irrelevant to any issue in the case. We are of the opinion that both of the objections were properly sustained. As to his qualifications, the witness did not testify to any facts to show that he was qualified to express his opinion on the value of real property in that vicinity. He had been in that locality about a year. There is no evidence that he knew of any property being bought or sold or that he had discussed the value of this or any other property situated in or near Coryell County. The evidence being wholly silent as to any qualifications of the witness to express an opinion on the enhanced value of said property, it was therefore not error upon the part of the trial court to refuse to permit the witness to testify. J. B. Watkins Land-Mortgage Co. v. Campbell, 98 Tex. 372, 84 S.W. 424; 19 Tex.Jur. pp. 84–85, sec. 59.

As to the testimony being immaterial and irrelevant, the appellant pleaded that under his contract with the appellee he was to perform the labor at prevailing wages and the same was to be credited on the first year's rent. He testified to the same effect, and further testified that he performed labor in reconditioning the dwelling, the barn, in building a chicken house, did some fencing, rebuilt a tractor, etc., and that the value of his labor was approximately $1,000; that the appellee furnished all the materials that went into the improvements except about $8, which consisted of a piece of poultry netting, some nails and hinges that were used for the chicken house.

■ The contract in question comes within Article 3995, Vernon's Ann Civ. Stats., which provides: "No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized:" Section 4 thereof reads: "Upon any contract for the sale of real estate or the lease thereof for a longer term than one year". The fact that the appellant went into possession and paid part of the consideration

is not sufficient to relieve the contract from the statute. The appellant had the additional burden of proving that in reliance upon the contract he had erected valuable and permanent improvements upon the land with the consent of the lessor, or, without such improvements, the presence of such facts as would make the transaction a fraud upon the appellant if it were not enforced. This he failed to do. This rule has been enunciated by the Supreme Court in the case of Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 1116, 15 A.L.R. 216, wherein the court said: "From an early time it has been the rule of this court, steadily adhered to, that to relieve a parol sale of land from the operation of the statute of frauds, three things were necessary: 1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. Payment of the consideration, though it be a payment in full, is not sufficient. This has been the law since Garner v. Stubblefield, 5 Tex. 552. Nor is possession of the premises by the vendee. Ann Berta Lodge v. Leverton, 42 Tex. 18. Each of these three elements is indispensable, and they must all exist."

■ The appellant testified that he performed the labor in repairing and erecting the improvements under a contract under the terms of which he was to receive the prevailing wage for his labor, same to be credited on the first year's rent. He further testified on cross examination that the appellee furnished all the material that went into said improvements. He recovered judgment for the value of his labor performed in this respect. Under such circumstances he is in no position to assert that his labor constituted valuable and permanent improvements and thereby enhancing the value of the property. Therefore the proffered testimony was immaterial and irrelevant.

■ However, the burden is upon the appellant to show that the court committed error. The record is also silent as to what the witness would have testified to if he had been permitted to express his opinion. We cannot assume that the exclusion of said testimony was error. Goldstein v. Susholtz, 46 Tex.Civ.App. 582, 105 S.W. 219 (writ ref.); Southwestern Telegraph & Telephone Co. v. Pearson, Tex.Civ.App., 137 S.W. 733 (writ ref.).

Appellant tendered issues upon the enhanced value of said premises that resulted from appellant's labor, which the court refused, and he raises this question as his second point. What we have heretofore said disposes of said proposition.

The appellant alleged that as a part of his lease contract the appellee agreed to complete fencing the premises with goat-proof material by the time appellant would want to buy and move some goats to the ranch. The date he alleges the fence was to be completed was on or about the month of April. In this connection he further alleged that on the 15th day of April he had the funds to purchase 600 head of goats at $6 per head to move to said ranch but could not do so by reason of the fact that the appellee had not completed the goat fence as previously agreed; that by reason thereof he could not purchase said goats and move same and had to cancel his option for the purchase thereof, and pleaded that he would have purchased 600 nanny goats at $6 a head, or at a total price of $3,600; that the present value of said goats would be $7,200; that the mohair clip which he would have received from said goats and sold would have brought the sum of $3,000; that said goats would have increased and produced 550 kids of the value of $12 each, or a total of $6,600; and he sued for judgment for $12,600 as the result of not being able to carry out his goat venture. In support of the foregoing proposition he testified as follows:

"Q. At the time you say you had an option—I believe in the pleadings that you said that you had an option about the 15th, somewhere along there, of April, to buy 600 goats? A. That is right.

"Q. Who was the man or woman with whom you were dealing with reference to these 600 goats? A. I was dealing through Calleston Trading Post.

"Q. Did you talk to anybody? A. Yes.

"Q. The man that had advertised those goats? A. I talked to Mr. Calleston at his trading post.

"Q. Where located? A. In San Antonio.

"Q. Were you at Gatesville at the time you had that conversation with him? A. Yes.

"Q. Was that by phone or in person? A. Telephone, of course.

"Q. He told you that he had 600 goats? A. Yes, advertised.

"Q. Did you ever see the goats? A. No.

"Q. You did not know whether those were good goats or sorry? A. Yes, I did.

"Q. How did you know? A. Because I knew the breed of goats that they come from.

"Q. They have a bad breed sometime? A. Not if a goat man.

"Q. You never did see the goats? A. No.

"Q. You did not know whether the goats were as represented to you? A. Yes, Calleston doesn't advertise otherwise.

"Q. I am just asking if you ever saw the goats and know of your own knowledge the character of goats he was advertising? A. Yes, I did, because I knew the breed of goats they came from. I knew the man belonged to the Goat Raisers' Association, and these are the only kind he had.

"Q. You did not see those particular goats? A. No.

"Q. Did you in any manner ever communicate with Mr. Calleston except over the phone about those goats? A. No.

"Q. You never saw him and he never saw you? A. Yes.

"Q. With reference to those goats? A. No, not with reference to the goats.

"Q. You did not write him or he write you? A. No.

"Q. You never did pay him any money on those goats for an option or otherwise? A. No.

"Q. You did not pay him a dime? A. No.

"Q. Just knew he had some goats advertised for sale? A. Yes, he told me whose goats they were and where they were.

"Q. And you never saw them? A. No, I did not see them but know what they were.

"Q. And you did not put any money up or pay any money for an option? A. No.

"Q. Did Mr. Calleston own the goats? A. No.

"Q. Who did own them? A. Schulenberg.

"Q. You never talked to Mr. Schulenberg? A. No.

"Q. You did not write to Mr. Schulenberg? A. No.

"Q. You did not see him in person? A. No.

"Q. You did not pay him any money? A. No.

"Q. You never made a trade with him for the purchase of the goats? A. No, there wasn't any need for it because I did not have the fence.

"Q. You never did make any trade with reference to those goats? A. No."

Appellant contends that since he went into possession of the premises with the consent of the appellee and paid part of the consideration for said lease, that the contract should be enforceable for a period of one year and that he should be allowed to recover loss of profits in his proposed goat venture by reason of the failure of the appellee to complete said fence with goat-proof material. He tendered issues to the court supporting this theory and requested that same be submitted to the jury, all of which the court refused. The appellee filed exceptions to the plaintiff's pleadings on the ground that said

damages as alleged could not be shown with reasonable certainty by competent evidence, that they depended on the chances of trade and fortune and were not susceptible to definite proof; that said alleged profits were merely conjectural and incapable of being ascertained with any reasonable degree of certainty, and that therefore they did not afford a proper basis for the recovery of damages. In support of appellant's foregoing proposition he cites the following cases: Sorrells v. Goldberg, 34 Tex.Civ.App. 265, 78 S.W. 711, 712; Whiteside v. Trentman, 141 Tex. 46, 170 S.W.2d 195; Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097; Matthewson v. Fluhman, Tex.Com. App., 41 S.W.2d 204; Poindexter v. Hicks, Tex.Civ.App., 260 S.W. 206. We deem it unnecessary to decide whether the contract was or was not enforceable for a period of one year, for the reason that we are of the opinion that under the proof appellant's alleged profits contended for were too uncertain and speculative. Appellant's own testimony shows conclusively that he did not have an option to purchase the goats. He never did see them. He never did communicate with the owner of said goats. He never made any character of trade for them with the owner or the man who ran the trading post. Appellant had never had any experience with the goat business in this part of the country and his only experience in the goat business is shown to have been some three years prior to moving to this ranch he owned a 147 acre tract of land below San Antonio, Texas, where, he testified, he had owned some goats, cattle and hogs. Appellant's contemplated venture in the goat business was in the nature of a new or unestablished enterprise, and therefore comes under the rule set forth in 13 T.J., p. 216, sec. 115, and cases there cited.

Appellant alleged and testified that he was employed at San Antonio, Texas, with an annual salary of $4,000 when he made the contract with the appellee, and that he resigned his position, relying upon the promises of the appellee that he would fence the ranch with a goat-proof fence. He sought to recover said sum

and tendered special issues upon this theory of the case, which the court refused. We are of the opinion that this proposition is controlled by the case of Duke v. Joseph, Tex.Civ.App., 213 S.W.2d 535, (writ ref.). It is therefore overruled.

Finding no reversible error, the judgment of the trial court is affirmed.