

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00298-CV

———————————————

CINDI TO, Appellant

V.

DAVID FUNKHOUSER, PERSONALLY AND ON BEHALF OF POWERSHIFT
ENERGY, LLC, Appellee

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-318252-20

Before Sudderth, C.J.; Birdwell and Womack, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

This is an appeal from a judgment entered in a lawsuit centered around a business dispute. Appellant Cindi To, Appellee David Funkhouser, and The BK Energy, LLC—an entity owned by Brian Kennedy—were the "[i]nitial [m]embers" of a company known as PowerShift Energy, LLC. After Funkhouser was fired as PowerShift's Vice President of Business Development, he filed suit against the other two initial members,[1] alleging that they had committed various bad acts and had breached the company's Operating Agreement by, among other things, firing him without his consent. Following a bench trial, the trial court found in Funkhouser's favor on many of his claims and awarded him damages. As relevant to this appeal, the trial court found that To and BK Energy had breached the Operating Agreement and signed a judgment awarding Funkhouser lost-wage damages in the amount of $506,000.00.[2]

On appeal, To argues that the trial court erred by awarding Funkhouser a judgment against her for lost wages because the Operating Agreement does not provide for the payment of any wages and because PowerShift—not To—was

---

[1]Although Kennedy is not an initial member of PowerShift in his individual capacity, Funkhouser asserted claims against both BK Energy and Kennedy individually.

[2]These were the only damages awarded against To.

2

Funkhouser's employer.[3] Because we agree that the trial court applied an improper measure of damages, we reverse the trial court's judgment against To and render a take-nothing judgment as to her.[4]

## I. BACKGROUND

In November 2019, PowerShift was formed. Shortly thereafter, Funkhouser, BK Energy, and To signed the Operating Agreement, which listed each of the signatories as one of PowerShift's initial members.[5] The Operating Agreement provided that each member would make a $100,000.00 capital contribution to the company to fund its initial operations. It further provided that although the business would be operated by managers, the managers were required to "notify and receive unanimous approval from all [i]nitial [m]embers" before making certain "key decisions," including (1) hiring or firing "[k]ey [e]mployees" such as the president or

---

[3]To also argues that the trial court improperly calculated the amount of Funkhouser's lost wages over a forty-four-month timeframe, but because we conclude that the lost-wages award itself was improper, we need not address this issue. *See* Tex. R. App. P. 47.1.

[4]The remaining defendants—BK Energy and Kennedy—did not file notices of appeal in the trial court; therefore, they are not parties to this appeal. *See, e.g.*, *Dick v. Bateman*, No. 03-05-00783-CV, 2006 WL 2589270, at *1 n.2 (Tex. App.—Austin Sept. 8, 2006, no pet.) (mem. op.). Accordingly, we do not alter the trial court's judgment as it pertains to them. *See* Tex. R. App. P. 25.1(c).

[5]The Operating Agreement reflects that BK Energy and Funkhouser each own a forty percent membership interest in PowerShift and that To owns the remaining twenty percent.

3

vice president or (2) altering the "[c]ompensation structure" of anyone "receiving [c]ompensation" from the company.

Prior to the execution of the Operating Agreement, PowerShift and Funkhouser entered into an agreement (the Employment Agreement) setting forth the terms of Funkhouser's employment as the company's Vice President of Business Development. Under the Employment Agreement's terms, Funkhouser was to receive an annual base salary of $138,000.00. The agreement made clear that Funkhouser's employment would be "on an 'at-will' basis," not for an agreed-upon term.

Eventually Kennedy and To became dissatisfied with Funkhouser's job performance and decided to fire him as vice president. In response, Funkhouser filed a lawsuit in which he asserted both personal and derivative claims against To, BK Energy, and Kennedy, including claims for fraud, conspiracy to defraud, negligence, violations of the Texas Deceptive Trade Practices Act (DTPA), and breach of contract. Funkhouser's breach-of-contract claim alleged that To and BK Energy had breached the Operating Agreement by, among other things, "withholding [Funkhouser's] bi-weekly pay, making decisions that require unanimous [m]ember approval without [Funkhouser's] approval, removing all [c]ompany funds from the [c]ompany bank account, . . . blocking and restricting [Funkhouser's] access to company files and accounts[,] . . . attempting to terminate [Funkhouser's] employment as if [he were] an employee and not a member," and reimbursing Kennedy for certain expenses "that were not accrued for the [c]ompany."

4

In April 2024, the trial court held a bench trial at which To represented herself pro se.[6] After considering the evidence, the trial court signed a judgment awarding Funkhouser and PowerShift damages against BK Energy and Kennedy, jointly and severally, in the amount of $98,704.23 plus treble damages of $296,112.69 for fraud, DTPA violations, and breach of contract and an additional $54,981.00 in damages for conspiracy to defraud. The trial court also awarded Funkhouser $506,000.00 in damages against To and BK Energy, jointly and severally, for breach of contract. This breach-of-contract award was for Funkhouser's unpaid wages based on To's and BK Energy's firing him without his consent in violation of the Operating Agreement.[7]

To filed a motion for new trial, which was denied after a hearing. This appeal followed.

---

[6]Although To, BK Energy, and Kennedy were initially represented by counsel, their attorney filed a motion to withdraw in October 2023, and the trial court signed an order granting the withdrawal motion in January 2024. Kennedy appeared at the trial, but he arrived late, left early, and did not testify.

[7]Even though the Employment Agreement made clear that Funkhouser's employment was "on an 'at-will' basis," because the Operating Agreement required unanimous member approval for the termination of key employees, including a vice president, Funkhouser effectively could not be fired without his consent.

II. DISCUSSION

On appeal, To argues, among other things,[8] that the trial court applied an improper measure of damages to Funkhouser's breach-of-contract claim against her. We agree.

## 1. Standard of Review

"Damages must be measured by a legal standard, and that standard must be used to guide the factfinder in determining what would compensate the injured party." *TeleResource Corp. v. Accor N. Am., Inc.*, 427 S.W.3d 511, 523 (Tex. App.—Fort Worth 2014, pet. denied) (citing *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 90 (Tex. 1973)). The proper measure of damages is a question of law that we review de novo. *Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 187 (Tex. 2022). "If the legal theories underlying the damages awarded do not conform to the law governing damages, we may reverse the award as a matter of law." *Id.* (citing *Whiteside v. Trentman*, 170 S.W.2d 195, 196 (Tex. [Comm'n Op.] 1943)).

## 2. Analysis

As noted, Funkhouser's breach-of-contract claim against To was based on her alleged breach of the Operating Agreement, not the Employment Agreement. The only breach-of-contract damages that Funkhouser alleged in his petition were

---

[8]To's brief enumerates three appellate issues, but they are multifarious and overlapping, and we need not address all of the various arguments raised therein to resolve this appeal. *See* Tex. R. App. P. 47.1. Because the measure-of-damages issue is dispositive, we limit our discussion to this argument. *See id.*

(1) $148,000.00 in unpaid initial contributions from To and BK Energy and (2) the recoupment of (i) $15,000.00 in unjustified reimbursements paid to Kennedy, (ii) the "bi-weekly pay" received by Kennedy and To after the occurrence of the alleged breach, and (iii) certain other "amounts paid out during the life of the [c]ompany." Funkhouser did not allege that he was owed any unpaid wages; indeed, he specifically denied that he was an employee of PowerShift.[9] Nevertheless, at trial, Funkhouser requested that the trial court award him forty-four months' worth of unpaid wages as damages for To's breach of the Operating Agreement, and the trial court did so.

Unpaid wages are a form of consequential damages. *See Edinburg Hous. Auth. v. Ramirez*, No. 13-19-00269-CV, 2021 WL 727016, at *5 (Tex. App.—Corpus Christi–Edinburg Feb. 25, 2021, no pet.) (mem. op.). "From at least the time of *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854), the widely recognized rule has been that consequential damages 'are not recoverable unless the parties contemplated at the time they made the contract that such damages would be a probable result of the breach.'" *Signature Indus. Servs., LLC*, 638 S.W.3d at 186 (quoting *Stuart v. Bayless*,

---

[9]Because unpaid wages are a form of consequential damages, *see* discussion *infra*, they must be specifically pleaded. *See Norwest Mortg., Inc. v. Salinas*, 999 S.W.2d 846, 864 (Tex. App.—Corpus Christi 1999, pet. denied); *see also* Tex. R. Civ. P. 56. Thus, to the extent Funkhouser sought to recover unpaid wages, his pleading was defective. *See Norwest Mortg., Inc.*, 999 S.W.2d at 864. However, To waived any complaint about this pleading defect by failing to raise a timely objection in the trial court. *See, e.g., Retzlaff v. Tex. Dep't of Crim. Just.*, 135 S.W.3d 731, 737 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (op. on reh'g) (observing that objections to an allegedly defective pleading "must be made in writing before the judgment is signed" or they are "deemed waived").

964 S.W.2d 920, 921 (Tex. 1998)). "Thus, to be recoverable, consequential damages must be foreseeable and directly traceable to the wrongful act and result from it." *Stuart*, 964 S.W.2d at 921 (first citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997) (op. on reh'g); and then citing *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981)).

The question we must decide, then, is whether the parties contemplated when they signed the Operating Agreement that they would probably be liable for damages in the form of unpaid wages in the event of a breach. *See Signature Indus. Servs., LLC*, 638 S.W.3d at 186; *Stuart*, 964 S.W.2d at 921. We conclude that they did not.

Nothing in the Operating Agreement suggests that the parties could have reasonably foreseen that by signing it, they might become personally liable for the payment of an employee's unpaid wages. Although Section 4.3(a) of the Operating Agreement required unanimous member approval for certain "key decisions," including those pertaining to the firing of "[k]ey [e]mployees" (such as the vice president) or the alteration of the company's "compensation structures," it did not provide for the payment of any wages or other compensation to the members or managers. Indeed, the Operating Agreement made no mention of wages at all. And it must be remembered that the Operating Agreement was adopted and signed by Funkhouser, To, and BK Energy in their capacity as members, not as employees. With this in mind, it is clear that Section 4.3(a) was designed to ensure that all members had input regarding important business decisions, not to protect employees

8

from wrongful termination. Thus, we conclude as a matter of law that damages in the form of unpaid wages were not foreseeable to the Operating Agreement's signatories under the facts presented here. *See Stuart*, 964 S.W.2d at 921. If Funkhouser had wished to pursue a claim for unpaid wages, he should have sued his employer—PowerShift—under the Employment Agreement, not his fellow members under the Operating Agreement.

### III. CONCLUSION

Having concluded that the trial court applied an improper measure of damages with regard to Funkhouser's breach-of-contract claim, we reverse the trial court's judgment against To and render a take-nothing judgment as to her.[10]

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: July 24, 2025

---

[10]We do not alter the trial court's judgment as it pertains to the other defendants. *See supra* note 4.

9