Opinion filed September 11, 2025



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00157-CV

_____

**BYRNE OIL COMPANY, Appellant**

**V.**

**JENNIFER WALRAVEN, INDIVIDUALLY AND AS HEIR OF JOE WALRAVEN, Appellee**

**On Appeal from the 91st District Court**
**Eastland County, Texas**
**Trial Court Cause No. CV1945179**

## O P I N I O N

This appeal concerns a provision often included in an oil and gas lease requiring the lessee to bury pipelines below plow depth when requested by the lessor. At the heart of this appeal is the question of whether 1) the lessor can undertake to bury the lessee's pipelines when the lessee delays in burying them, and then 2) seek compensation from the lessee for his cost in burying the pipelines.

After a bench trial, the trial court awarded the successor lessor $30,000 for a portion of the cost he incurred to bury a portion of the pipeline on the leased tract. The trial court also awarded the successor lessor attorney's fees in the amount of $125,000. Appellant Byrne Oil Company (Byrne Oil), the successor lessee, brings two issues on appeal challenging the trial court's judgment. We affirm in part, reverse and render in part, and reverse and remand in part.

*Background Facts*

The oil and gas lease at issue was executed in 1982 utilizing a preprinted "Producers' 88" form. The lease included the following provision: "When requested by lessor, lessee shall bury pipeline[s] below plow depth." Byrne Oil is the successor-in-interest of the lessee of a tract of property in Eastland County. Joe Walraven was a successor-in-interest of the lessor.[1]

Walraven purchased the surface of the leased tract in 2016. He also acquired a partial royalty interest in the leased tract. Walraven sent a letter to Joe Byrne, the principal of Byrne Oil, in November 2016 that stated "I am requesting that you please . . .[b]ury all of your lines connecting the oil and gas wells" on the lease.[2] There were ten wells on the property at the time, and there were over 10,000 feet of above-ground flow lines on the lease.

At trial, Byrne contended that Walraven's November 2016 letter was not a proper request under the lease. Byrne was unsure whether Walraven could enforce the pipeline provision because Walraven only indicated in the letter that he had purchased the surface. Additionally, Byrne did not believe that the letter was a

---

[1]Joe Walraven died during the pendency of this proceeding in the trial court. His wife, Jennifer Walraven, succeeded him as a party by order of the trial court. Unless otherwise noted, all references in this opinion to "Walraven" are to Joe Walraven.

[2]Unless otherwise noted, all reference in this opinion to "Byrne" are to Joe Byrne.

2

proper request because Walraven did not give him sixty days to comply with the request.  In that regard, the lease contained the following notice provision:

> In the event lessor considers that lessee has not complied with all its obligations hereunder, both express and implied, before production has been secured or after production has been secured, lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract.  Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by lessor.  The service of said notice shall be a precedent to the bringing of any action by lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee.  Neither the service of said notice nor the doing of any acts by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder.

Byrne testified that he met with Walraven one to two months later and that Walraven did not mention anything about the pipelines on the lease during the meeting.  Byrne believed that Walraven no longer wanted the pipelines to be buried because he did not orally request it during their meeting.  However, Walraven's subsequent written correspondence suggested otherwise.  Walraven wrote Byrne in December 2018 stating:

> I have asked you to bury the lines crossing my property for the last 2 months.  I have asked 3 times verbally and once with a certified letter mailed to you in [2016].  As of this date, you have done nothing.  I have spent thousands of dollars working around and avoiding your lines while clearing my property.  I will start plowing in January 2019.  I will also push the lines and brush in which your lines are entangled, and they will be piled and burned.

An attorney responded to Walraven on behalf of Byrne Oil in a letter dated January 3, 2019.  This letter suggested that Walraven did not have the right to request that the lines be buried on the leased tract.  Walraven's attorney responded with a letter dated January 31, 2019, wherein the attorney pointed out that the lease included

a provision requiring the lessee to bury pipelines below plow depth when requested by the lessor. This letter further stated:

> Please be advised that Mr. Walraven will allow an additional 10 days from the date of this letter for Byrne to comply with the contractual provisions. If all such lines are not buried below plow depth or removed by the expiration of the 10-day period, Mr. Walraven will remove the lines and we will initiate legal action against Byrne to recover the costs expended in this effort.

Byrne testified that Walraven's threats to remove and burn the flow lines prompted him to seek legal action. Byrne Oil filed suit against Walraven on February 8, 2019, wherein it sought an injunction against Walraven to prevent interference with the flow lines. However, the record does not reflect that a hearing ever occurred on Byrne Oil's request for injunctive relief.

In addition to filing an answer to Byrne Oil's petition in 2019, Walraven filed a counterclaim wherein he alleged that Byrne Oil had breached the lease by failing to bury flow lines on the lease. Walraven also pleaded for injunctive relief against Byrne Oil to "prohibit[] Bryne Oil from further interference with Walraven's reasonable use of the Land." However, the record also does not reflect that a hearing occurred on Walraven's request for injunctive relief.

The suit filed in 2019 remained pending until trial occurred on January 23, 2023. Early in the litigation, Byrne proposed relocating the flow lines to lie beside existing roads on the leased tract because he preferred not burying them so that he would be able to identify any leaks that might occur. Walraven declined Byrne's offer to relocate the flow lines and he renewed his demand for the flow lines to be buried. Walraven also asserted that there had been many prior leaks and spills on the leased tract.

Byrne Oil eventually hired a contractor in August 2020 to bury most of the flow lines. Byrne testified that he decided to proceed in this manner because he "just

4

wanted to get this [dispute] over with." Byrne Oil paid Crowder Construction $7,385.66 to bury almost 11,000 feet of flow lines. Byrne testified that Crowder Construction did not bury all of the flow lines because there were two areas that Walraven told him that did not need to be buried.

In April 2021, Walraven hired US Ecology to bury additional portions of flow lines on the property. US Ecology began work on April 5, 2021. Byrne Oil's attorney sent a letter dated April 9, 2021 to counsel for Walraven advising that Byrne Oil was aware that a crew was on the lease to bury flow lines. The letter stated: "[p]lease be advised that Mr. Walraven or his employees/agents do not have permissions to touch/bury any lines that belong to Byrne Oil Company." US Ecology continued its work burying flow lines after the letter. Byrne testified that US Ecology buried approximately 1,300 feet of flow lines. Walraven paid US Ecology $60,240.29 for the work that it performed on the property.

At the time of trial in 2023, Byrne Oil's live pleadings consisted of its third amended petition and its first amended original answer. In its petition, Byrne Oil sought a declaratory judgment to the effect that it had "complied with all rights, requirements, and conditions under the Lease." Byrne Oil also alleged that Walraven committed an act of trespass in burying its flow lines. In its answer, Byrne Oil asserted three affirmative defenses: unclean hands, that Walraven was barred from recovering any damages committed while in the act of trespass, and that Texas does not recognize self-help repossession of real estate.

Walraven's live pleading was his second amended counterpetition. In it, Walraven asserted a cause of action for breach of contract against Byrne Oil based upon the pipeline burial provision. Walraven also asserted claims for negligence and gross negligence. In support of the negligence claim, Walraven asserted that Byrne Oil had made an excessive use of the surface and that Byrne Oil had contaminated the property by dumping hydrocarbons on the ground. Walraven

5

additionally asserted a claim for negligence per se based upon Byrne Oil's alleged violations of Railroad Commission rules. Walraven also asserted a claim for trespass based upon contamination of the surface and the failure to bury the pipelines below plow depth. Walraven alleged that he was permitted to seek his cost to bury pipelines to cure the trespass and to remedy Byrne Oil's breach of the pipeline burial provision.

The bench trial occurred on a single day with only four witnesses testifying: Byrne, Jennifer Walraven, a representative of Crowder Construction, and a representative of US Ecology. At the close of evidence, the trial court announced that it was taking the matter under advisement, and that if it awarded attorney's fees to anyone, it would consider the matter upon affidavits.

In its findings of fact and conclusions of law, the trial court determined that Byrne Oil "failed and refused to bury all the pipelines as requested for over five years." The trial court awarded a recovery to Walraven based upon his cost for burying flow lines but only for a portion of the amounts charged by US Ecology. Specifically, the trial court determined that amounts paid by Walraven to US Ecology was excessive because it included cosmetic work and other work requested by Walraven in addition to burial of the flow lines as required by the lease.

*Analysis*

In its first issue, Byrne Oil asserts that Walraven was not entitled to a recovery of damages for his costs in having US Ecology bury flow lines because neither the lease nor Texas law permits the remedy of "unauthorized self-help trespass" to its equipment and interference with the dominate estate. "Self-help" has been defined as "a privilege to do something that would otherwise be legally actionable in order to prevent or cure a legal wrong." Catherine M. Sharkey, *Trespass Torts and Self-Help for an Electronic Age*, 44 TULSA L. REV. 677, 683 (2009).

6

Byrne Oil's legal challenge to the trial court's damage award takes two forms. First, Byrne Oil contends that the plain language of the lease limited Walraven's remedies to "the judicial process." Byrne Oil next contends that "[l]ong-standing tenets of oil and gas law" precluded Walraven from a self-help remedy.

*The Lease's Notice Provision does not Limit the Lessor's Remedies*

Byrne Oil cites the notice provision that we quoted above to assert that the lease limits the lessor to pursuing remedies through "the bringing of any action by lessor on said lease." Further, Byrne Oil contends that Walraven initially complied with this provision, by bringing claims in the underlying suit, but that he then abandoned the legal process by undertaking a self-help remedy.

An oil and gas lease is a contract subject to general contract principles. *See Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 147–48 (Tex. 2020). "The construction of an unambiguous contract is a question of law for the court." *Willis v. Donnelly*, 199 S.W.3d 262, 275 (Tex. 2006) (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999)). "Parties to a contract may agree on remedies for breach and that the agreed remedy is exclusive." *GT & MC, Inc. v. Tex. City Ref., Inc.*, 822 S.W.2d 252, 256 (Tex. App.—Houston [1st Dist.] 1991, writ denied).

The provision upon which Byrne Oil relies does not limit the parties to a particular remedy through the judicial process. The Texas Supreme Court addressed the same provision in *Texas Oil & Gas Corp. v. Vela*, 429 S.W.2d 866, 874–75 (Tex. 1968). The court held that the purpose of the provision was to protect the lessee from a forfeiture of the lease. *Id.* at 875. The provision only serves to give the lessee a sixty-day opportunity to cure an alleged default before a suit may be brought to cancel the lease. *See id.* In that same vein, we conclude that the provision does not establish an exclusive remedy for the lessor to pursue in the event of a breach of the lease by the lessee.

*Is the Lessor Precluded from Utilizing a Self-Help Remedy
that Involves Physical Interference with Oil and Gas Equipment?*

Byrne Oil next asserts that the tenets of oil and gas law preclude a lessor from using a self-help remedy that involves a trespass to the dominant mineral estate. It contends that Walraven should only have a claim for either damages or specific performance. Further, Byrne Oil asserts that there is no authority that supports a self-help remedy for a breach of the pipeline burial provision.

"'The proper measure of damages is a question of law,' which we review *de novo*." *Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 187 (Tex. 2022) (quoting *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)). "If the legal theories underlying the damages awarded do not conform to the law governing damages, we may reverse the award as a matter of law." *Id.* (citing *Whiteside v. Trentman*, 170 S.W.2d 195, 196 (Tex. [Comm'n Op.] 1943)).

*Sufficiency of Byrne Oil's Pleadings*

Initially, Walraven asserts that Byrne Oil waived its reliance on a claim of trespass because it did not plead a claim for trespass to chattels. Walraven contends that Byrne Oil only pleaded a claim for trespass to realty and that, since the flow lines on the lease constituted personal property, Byrne Oil's pleadings were insufficient.

"Texas follows a 'fair notice' standard for pleading, in which courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy." *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007). Walraven is incorrect in his assertion that Byrne Oil failed to adequately plead its claims for trespass with respect to the flow lines. In its amended answer, Byrne Oil alleged that "[Walraven] is barred from recovering any damages while in the act of

8

trespass." It further alleged that Walraven "has attempted to manufacture damages while in the act of trespass." In Byrne Oil's other live pleading, its third amended petition, it alleged as follows:

19. Walraven committed an act of trespass in burying [Byrne Oil's] lines. [Byrne Oil] has a legal ownership right as the mineral estate owner to use so much of the surface as is required for the production of minerals. This includes any and all flow lines on the Lands. The flow lines on the Lands are the undisputed property of [Byrne Oil]. Walraven physically, intentionally, voluntarily, and without authorization trespassed on [Byrne Oil's] property when physically moving [Byrne Oil's] lines and burying them. Walraven's trespass caused injuries to [Byrne Oil's] right of possession and the actions of Walraven will require [Byrne Oil] to incur damages as outlined herein.

20. Pleading additionally or alternatively, Walraven's actions constitute Trespass to Personality.

Thus, Byrne Oil sufficiently pleaded that Walraven had committed a trespass by interfering with its flow lines to give Walraven notice of its claim.

*The Mineral Estate vs. the Surface Estate*

The Texas Supreme Court recently addressed the interplay between the dominant mineral estate and the servient surface estate:

The severed mineral estate has the implied right to use as much of the surface estate as reasonably necessary to produce and remove minerals. The mineral estate is called "dominant" and the surface estate "servient[,]" not because the mineral estate is in some sense superior, but because it receives the benefit of the implied right of use of the surface estate.

. . . .

Thus, as we observed in [*Lightning Oil Co. v. Anadarko E&P Onshore*, LLC, 520 S.W.3d 39, 50 (Tex. 2017)], the mineral owner may "use as much of the surface . . . as is reasonably necessary to recover its minerals."

9

*Myers-Woodward, LLC v. Underground Servs. Markham, LLC*, 716 S.W.3d 461, 470 (Tex. 2025) (internal citations omitted). The court further noted, however, that:

> [W]e caution that the rights encompassed by these general labels may vary depending on the language chosen by the parties to any particular conveyance. Not all mineral estates are created equal. Resolving a dispute over the scope of a mineral conveyance should therefore begin with the text of the conveyance—not with generalizations about the default nature of a "surface estate" or a "mineral estate." Doctrinal labels such as these—and the caselaw from which they derive—are of course very useful, indeed essential, when courts are confronted with questions not fully answered by the text of the conveyance.

*Id.* at 466.

As the owner of the mineral estate, Byrne Oil had the implied right to use the surface as reasonably necessary to produce and remove minerals. *See id.* at 470. However, its use of the surface estate was limited by any applicable contractual terms in the lease. *See id.* at 466. Here, the pipeline burial provision is a contractual term that affects Byrne Oil's use of the surface because it requires the lessee to bury pipelines below plow depth when requested by the lessor. *See id.*; *see also Manges v. Gulf Oil Corp.*, 394 F.2d 487, 488 (5th Cir. 1968) (A clause in a mineral lease providing the lessor with the right to require the burial of pipelines is in the nature "of a limitation on the mineral owner's surface rights.") (applying Texas law).

However, the pipeline burial provision at issue is silent as to the remedies available to the lessor if the lessee breaches the pipeline burial provision. Thus, the lease does not provide any guidance on Walraven's remedies for Byrne Oil's breach of the pipeline burial provision other than to provide that the "lessee shall bury pipeline" when requested by lessor. Further, there are no cases that have specifically authorized a lessor to use a self-help remedy to enforce a pipeline burial provision.[3]

---

[3]We are aware of one instance where the lessor made a recovery for his cost incurred in burying the lessee's pipeline. *See Rostocil v. Phillips Petroleum Co.*, 502 P.2d 825, 825–26 (Kan. 1972). The lessor

Thus, the answer to the primary question presented in this appeal must be derived from other sources.

*Trespass*

Walraven contends that Byrne Oil's breach of the pipeline burial provision constituted a trespass upon the surface estate. "The gist of an action of trespass to realty is the injury to the right of possession." *Coastal Oil & Gas Corp. v. Garza Energy Tr.*, 268 S.W.3d 1, 9 (Tex. 2008) (quoting *Pentagon Enters. v. Sw. Bell Tel. Co.*, 540 S.W.2d 477, 478 (Tex. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.)). In *Crosstex North Texas Pipeline, L.P. v. Gardiner*, the Texas Supreme Court noted that "a trespass involves interference with the plaintiffs' right to *exclusive possession* of their land." 505 S.W.3d 580, 603 n.17 (Tex. 2016). By contrast, "a nuisance involves interference with the plaintiffs' right to *the use and enjoyment* of their land." *Id.* Because of Byrne Oil's rights, as the mineral interest owner, to use the surface estate of the lease for production purposes, Walraven's possession of the surface estate was not exclusive as far as Byrne Oil is concerned. As a result, Byrne Oil's breach of the pipeline burial provision was more akin to a nuisance than a trespass. *See id.*

As noted previously, Byrne Oil asserts that Walraven's act of using a third party to bury the flow lines constituted a trespass in its own right because the flow lines were Byrne Oil's property. In this regard, the lease granted the lessee the right to lay pipelines on the lease to produce minerals. Walraven responds to Byrne Oil's contention by asserting that he could not have committed a trespass on the surface estate of the lease because it was his property. However, Byrne Oil is not asserting interference with realty per se, but rather to its personal property.

in *Rostocil* hired a third party to bury a pipeline to below terrace depth. *Id.* at 826. The lessor recovered his cost in burying the pipeline from the lessee. *Id.* However, the court did not specifically address whether this form of self-help was an available remedy. In this regard, the lessee did not contest the reasonableness of the amount sought by the lessor for hiring someone to bury the pipeline.

11

"Trespass to chattel is the wrongful interference with the use or possession of another's property." *Jones v. Boswell*, 250 S.W.3d 140, 143 (Tex. App.—Eastland 2008, no pet.) (citing *Omnibus Int'l, Inc. v. AT & T, Inc.*, 111 S.W.3d 818, 826 (Tex. App.—Dallas 2003, pet. dism'd)). Walraven asserts that his act of burying the flow lines was not wrongful because of Byrne Oil's breach of the pipeline burial provision. Walraven additionally asserts that his act of burying the flow lines did not constitute an interference with Byrne Oil's property rights because Byrne Oil had already agreed to bury the flow lines if requested by Walraven.

If the pipeline burial provision had not existed in the lease, Walraven's action in causing the flow lines to be buried would constitute a trespass to, and interference with, Byrne Oil's equipment. But because of the existence of the pipeline burial provision, the case for establishing that Walraven committed a trespass with respect to the flow lines is not clear-cut. However, the flow lines remained Byrne Oil's property even though they existed in a location where they no longer were permitted to be. Thus, this case essentially presents a situation of mutual interference with the other party's property interest on the lease.

*Breach of Contract*

The recovery that Walraven obtained from the trial court was for Byrne Oil's breach of the lease. The ultimate goal in measuring damages for a breach-of-contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach. *Walden v. Affiliated Comput. Servs., Inc.*, 97 S.W.3d 303, 328 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The facts of the case determine the proper measure of damages. *Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 481 n.1 (Tex.1984). Walraven contends that when a breach of contract results in injury to real property that is temporary in nature, the claimant is entitled to recover the amount necessary to repair the injury. *See*

12

*Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 478–81 (Tex. 2014).

The injury that Walraven claims is the existence of flow lines on the surface estate in breach of the pipeline burial provision. He cites *Gilbert Wheeler* for the proposition that he was entitled to recover damages for Byrne Oil's breach of the pipeline burial provision and that his recovery for the cost he incurred to bury the flow lines was compensable as a cost for putting the property in a condition without flow lines on the surface. Walraven further suggests that his act of hiring a third party to bury the flow lines was justified as mitigation of his damages. *See Atrium Med. Ctr., LP v. Houston Red C LLC*, 595 S.W.3d 188, 197 n.40 (Tex. 2020) ("Mitigation is usually required in breach of contract cases.").

*Was Walraven Permitted to Use Self-Help?*

The relevant question to be resolved in this appeal remains: was Walraven's act of burying the flow lines a permissible remedy for Byrne Oil's breach of the pipeline burial provision?

Irrespective of Walraven's theory of recovery, whether it be trespass or breach of contract, the existence of unburied flow lines on the lease in violation of the lease's pipeline burial provision was in the nature of a nuisance. "[T]he term 'nuisance' refers not to a defendant's conduct or to a legal claim or cause of action but to a type of legal injury involving interference with the use and enjoyment of real property." *Crosstex*, 505 S.W.3d at 588. In this regard, Byrne Oil's continued failure to bury all of the flow lines on the property interfered with Walraven's use and enjoyment of the surface estate, a property interest to which Walraven did not have exclusive possession as far as Byrne Oil is concerned. *See id.* at 603 n.17. "It is well-settled that three different remedies are potentially available to a claimant who prevails on a private-nuisance claim: damages, injunctive relief, and self-help

13

abatement. However, not all remedies are available in every case." *Id.* at 610 (internal citations omitted).

There are few Texas cases that have addressed the circumstances when self-help abatement is available. The most notable case is *Martin v. Martin*, 246 S.W.2d 718, 719–20 (Tex. App.—Fort Worth 1952, no writ). *Martin* involved a suit between brothers concerning an encroaching sewer line. *Id.* at 719. The court stated that "[n]o doubt a person has a right to have removed from his premises, structures placed there without his consent, (hazarding the principle of estoppel) by other parties regardless of whether the same is injurious to his property or not." *Id.* The court then outlined the various remedies that were available to the landowner, including self-help abatement. *Id.* at 719–20. The court held that self-help abatement is not available "where there is time and opportunity for the interposition of an adequate legal remedy." *Id.* at 720. This limitation on self-help abatement is supported by legal commentators:

> The privilege of abatement of a nuisance by self-help is of ancient origin, and existed at a time when early common law actions afforded a legal means of compelling the nuisance to be discontinued. It is closely related to the privilege of using reasonable force to protect the exclusive possession of land against trespass, and may be justified on the same basis, that injuries, "which obstruct or annoy such things as are of daily convenience and use, require an immediate remedy, and cannot wait for the slow process of the ordinary forms of justice." Consequently, the privilege must be exercised within a reasonable time after knowledge of the nuisance is acquired or should have been acquired by the person entitled to abate; *if there has been sufficient delay to allow a resort to legal process, the reason for the privilege fails, and the privilege with it*.

14

W. Keeton, D. Dobbs, R. Keeton, & D. Owen, PROSSER AND KEETON ON TORTS § 89, at 641 (5th ed. 1984) (emphasis added).[4] Thus, self-help abatement is a "privileged" remedy that cannot be pursued if there is adequate time to pursue a judicial remedy. *Id.*

The law's preference for judicial intervention rather than a self-help remedy is supported by other authority. In *Houck v. Kroger Co.*, 555 S.W.2d 803, 806 (Tex. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.), a landlord/tenant dispute, the court stated that "[r]eliance on self-help to settle [disputes] evidences a disrespect for legal processes." In *Smith v. Huston*, 251 S.W.3d 808, 828–29 (Tex. App.—Fort Worth 2008, pet. denied), the Second Court of Appeals suggested that an attempt by the owner of the servient estate to withhold access to an easement for non-payment of fees was not permitted without judicial intervention. In *Lighthouse Church of Cloverleaf v. Texas Bank*, 889 S.W.2d 595, 603 (Tex. App.—Houston [14th Dist.] 1994, writ denied), the court noted that "Texas does not recognize 'self-help repossession' of real estate."

Walraven cites *Allen v. Virginia Hill Water Supply Corp.* for the proposition that "[n]o doubt a person has a right to have removed from his premises, structures placed there without his consent." 609 S.W.2d 633, 635 (Tex. App.—Tyler 1980, no writ) (quoting *Martin*, 246 S.W.2d at 719). However, *Allen* is distinguishable from the facts in this appeal. The claimant in *Allen* did not pursue a self-help remedy of abating the encroachment itself, but rather it sought an order from the trial court seeking for it to be removed by the defendant. *Id.* at 634. Additionally, the quote in *Allen* cited by Walraven came from *Martin*, and we previously addressed its limitation on the availability of self-help abatement when there is adequate time to pursue a judicial remedy. Further, the flow lines were not placed on the property

---

[4]We note that the Texas Supreme Court in *Crosstex* cited Section 89 of *Prosser and Keeton on Torts* when it outlined the remedies available for a nuisance. 505 S.W.3d at 610.

without Walraven's consent. In this regard, the flow lines existed on the property before Walraven acquired the property and there is no evidence that Walraven's predecessor-in-interest requested that they be buried prior to Walraven's acquisition.

Here, suit had been pending for over two years when Walraven hired US Ecology to bury the remaining portions of the flow lines. In his initial pleading, Walraven sought injunctive relief to require Byrne Oil's compliance with the lease by burying the flow lines. *See Crosstex*, 505 S.W.3d at 610 (noting the availability of injunctive relief to abate a nuisance). Thus, Walraven had adequate time and opportunity to seek a legal remedy by way of the judicial process given the fact that the case had been in litigation for over two years before Walraven caused the flow lines to be buried. As such, *Martin* instructs us that Walraven was precluded from using the remedy of self-help abatement to bury the remaining portions of the flow lines on the lease. *See Martin*, 246 S.W.2d at 719–20.

Oil and gas law also supports a conclusion that the owner of the surface estate should not be permitted to remedy the breach of a pipeline burial provision through self-help. The flow lines on the lease are the property of Byrne Oil as the lessee and owner of the dominant mineral estate. Irrespective of the breach of the pipeline burial provision, allowing the owner of the surface estate to move or relocate the lessee's equipment has the potential for disturbing mineral production as well as creating an environmental risk in the event of an accident. The lessee or its operator is better suited to either perform the work of relocating production equipment or retain a third party to perform such work rather than the owner of the surface estate.

No doubt Walraven was frustrated by Byrne Oil's delay and refusal to bury all of the flow lines. Frustration, however, cannot justify self-help when the legal remedies of damages and injunctive relief were available, particularly in a case that had been in litigation for over two years by the time Walraven hired US Ecology to bury the flow lines. Accordingly, we sustain Byrne Oil's first issue asserting that

16

Walraven was not permitted to obtain a recovery for his use of an unwarranted self-help remedy.

*Disposition*

Byrne Oil's first issue challenges the trial court's award to Walraven for using self-help to bury the flow lines. This award constituted a recovery of $30,000 for Walraven's cost in having US Ecology perform the work of burying flow lines. We conclude as a matter of law that Walraven was not permitted to obtain a recovery for utilizing self-help to remedy Byrne's Oil's breach of the pipeline burial provision. However, this was not the only recovery obtained by Walraven as damages. The trial court also awarded Walraven $1,869.32 for his costs to establish that he was permitted to enforce the pipeline burial provision. Byrne Oil has not challenged this award on appeal. Accordingly, we only reverse $30,000 of the compensatory damages that the trial court awarded to Walraven and render judgment that Walraven recover $1,869.32 in damages. *See* TEX. R. APP. P. 43.2(c) (permitting the court of appeals to reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered.); *see also Signature*, 638 S.W.3d at 194–95.

*Attorney's Fees*

In its second issue, Byrne Oil challenges the award of attorney's fees to Walraven in the amount of $125,000. First, Byrne Oil asserts that the award should be reversed if we sustain its first issue. Byrne Oil additionally asserts that Walraven failed to segregate its attorney's fees for his claims that were compensable from his claims that would not support an award of attorney's fees. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006). Further, Byrne Oil asserts that Walraven's evidence of attorney's fees did not meet the standard required by *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469,

17

498–99 (Tex. 2019), and that the fee award was unreasonable in relation to the amount recovered.

Because we are reversing Walraven's primary recovery of compensable damages, and because the trial court's award of attorney's fees to Walraven was based on the successful prosecution of Walraven's claims, we sustain Byrne Oil's second issue challenging Walraven's attorney's fees.[5] We reverse the award of attorney's fees and remand the issue to the trial court for reconsideration. *See Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 883–84 (Tex. 2017).

*This Court's Ruling*

We reverse the award of compensatory damages to Walraven in the amount of $30,000 and render judgment that Walraven only recover $1,869.32 in compensatory damages. Thus, we affirm the trial court's award of damages to Walraven in part in the amount of $1,869.32. We also reverse the award of $125,000 in attorney's fees to Walraven and remand the issue of attorney's fees to the trial court for further proceedings consistent with this opinion.

JOHN M. BAILEY
CHIEF JUSTICE

September 11, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[5]We do not reach Byrne Oil's contention that Walraven failed to properly segregate his attorney's fee or its assertion challenging the amount or evidentiary support.